IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD OBENAUF,

    Plaintiff,

v.

ALLIED INTERSTATE, LLC,

    Defendant.

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1. After Plaintiff Richard Obenauf had requested, in writing, that Defendant Allied Interstate, LLC, a debt collection company, stop calling him – it was attempting to collect debts owed by someone who had earlier been assigned Mr. Obenauf's home telephone number and debts allegedly owed by his relatives – it nonetheless continued to call him. Mr. Obenauf seeks damages under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and New Mexico consumer protection law.

### Jurisdiction

2. This Court has jurisdiction under the FDCPA, 15 U.S.C. § 1692k(d), and under 28 U.S.C. §§ 1331 & 1337. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

### Parties

3. Plaintiff Richard Obenauf resides in Albuquerque, New Mexico.

4. Defendant Allied Interstate, LLC is a debt collection agency whose principal business is the collection of consumer debts. It regularly collects or attempts to collect debts originally owed or due or asserted to be owed or due another. It is licensed as a collection

agency by the New Mexico Financial Institutions Division. Allied Interstate is "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## Facts

5. Allied Interstate had purchased debt accounts it was trying to collect from Rebecca Edwards, Roger Neugebauer or Mark Edwards or it had obtained the right to collect on these accounts, after the accounts were in default.

6. Upon information and belief, each of these accounts was obtained for personal, family or household purposes.

7. In May 2010, Mr. Obenauf received a new home telephone number.

8. Roger Neugebauer had been assigned the number before him.

9. Mr. Obenauf spends a significant time at home working on his Ph.D. thesis and performing duties related to his part time teaching position at University of New Mexico.

10. Because of the nature of this work, Mr. Obenauf makes efforts to ensure that his work can proceed without distraction or interruption.

11. On October 28, 2011, Mr. Obenauf received a telephone call from Allied Interstate at (505) 881-5245, his home telephone number.

12. This call was placed from (877) 478-7645.

13. This telephone number is assigned to Allied Interstate or an entity that places calls for Allied Interstate.

14. For the first 40 seconds of the call, Mr. Obenauf was unable to speak with anyone as no person was present at the other end of the line.

15. This 40 seconds of dead air was caused by Allied Interstate's (or the entity that placed the call for Allied Interstate) use of an automated dialer system.

16. Mr. Obenauf requested to be placed on Allied Interstate's do not call list.

17. After 40 seconds of dead air, Mr. Obenauf was able to speak to "Jennifer Joy."

18. Ms. Joy stated that the call may be "recorded for quality and training purposes."

19. Ms. Joy asked for Rebecca Edwards.

20. Ms. Edwards is Mr. Obenauf's sister in law. Ms. Edwards has never lived at Mr. Obenauf's home.

21. Ms. Joy refused to tell Mr. Obenauf the company that was placing the call or provide him with a telephone number or mailing address for the company that was calling.

22. Mr. Obenauf asked to speak with a supervisor.

23. Mr. Obenauf was placed on hold for several minutes.

24. Ms. Joy returned to the line and told Mr. Obenauf that a supervisor was not available to talk to him.

25. Mr. Obenauf stated that he would wait on the line until a supervisor was available.

26. Ms. Joy again refused to tell Mr. Obenauf the company that was placing the call or provide him with a telephone number or mailing address for the company that was calling. She would only state that the call concerned a "personal matter" for Ms. Edwards.

27. Mr. Obenauf told Ms. Joy that his home telephone number was not a valid number for Ms. Edwards.

28. Ms. Joy refused to state how Allied Intestate obtained Mr. Obenauf's home telephone number other than state that the number was "on the file."

29. Ms. Joy confirmed that Ms. Edwards had not provided the Mr. Obenauf's home telephone number to Allied Interstate.

3

30. Ms. Joy falsely claimed that Ms. Edwards had telephoned Allied Interstate from Mr. Obenauf's home telephone number.

31. Mr. Obenauf was never connected to a supervisor. Instead, Allied Interstate hung up on him.

32. Mr. Obenauf dialed (877) 478-7645 right after he was hung up on. The person who answered the call identified herself as "Gina" from Allied Interstate.

33. Gina stated that the call may be "recorded for quality and training purposes."

34. Mr. Obenauf again asked for the mailing address for Allied Interstate.

35. Mr. Obenauf told Gina that his home telephone number was not a valid number for Ms. Edwards.

36. Gina first resisted providing a mailing address for Allied Interstate, placing Mr. Obenauf on hold repeatedly, but finally provided a mailing address.

37. Mr. Obenauf thanked Gina for "removing my number from your database" and the call ended cordially.

38. That same day (October 28, 2011), Mr. Obenauf mailed Allied Interstate a letter at the address given by Gina in which he recited his home telephone number, stated that Ms. Edwards did not live there and requested that Allied Interstate "<u>cease all communication to my phone or otherwise cause it to ring</u>, as I am not the person you are looking for."

39. This letter was sent by certified mail at a cost of $5.59.

40. On October 31, 2011, Allied Interstate received the letter.

41. Prior to the call from Allied Interstate, Mr. Obenauf had received numerous calls from several debt collectors looking for Mr. Neugebauer, so he is in the habit of trying to immediately stop collection calls wrongly placed to his home telephone number so that he

4

would not be disturbed by further calls from the particular collector. Part of the method he uses is to send a letter to the debt collector.

42. Mr. Obenauf has sent letters to several other debt collectors and most stopped calling after receipt of a letter substantially similar to the letter he sent to Allied Interstate.

43. However, Allied Interstate continued to telephone Mr. Obenauf's home telephone number. It telephoned him on February 7, 2012, and perhaps other times as well.

44. Mr. Obenauf was frustrated and aggravated by Allied Interstate's failure to leave him alone.

45. The February 7 call was placed from (866) 310-3882.

46. This telephone number is assigned to Allied Interstate or an entity that places calls for Allied Interstate.

47. With the February 7 call, Mr. Obenauf did not pick up nor did Allied Interstate leave a voicemail message.

48. Mr. Obenauf dialed (866) 310-3882 shortly after Allied Interstate had placed the February 7 call.

49. The person who answered the call identified herself as "Corina" from Allied Interstate.

50. Corina asked for Roger Neugebauer or Mark Edwards.

51. Mr. Edwards is Mr. Obenauf's father in law. Mr. Edwards has never lived at Mr. Obenauf's home.

52. Corina stated that she had obtained Mr. Obenauf's home telephone number from "the system."

53. Corina stated that "all calls are monitored and recorded for quality purposes."

5

54. Allied Interstate's system, or the system of the third party calling service that it uses, does not allow an effective block to be placed on a particular telephone number across different accounts on which it is collecting.

55. As a result of Allied Interstate's conduct, Mr. Obenauf has suffered actual damages, including:

   a. Out of pocket expenses;

   b. Lost time; and

   c. Aggravation and frustration.

### First Claim for Relief: Violations of the FDCPA

56. Allied Interstate's actions violate the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(5) 1692e, 1692e(5), 1692e(10) and 1692f.

57. Mr. Obenauf is entitled to recover statutory damages, actual damages and reasonable attorney fees and costs.

### Second Claim for Relief: Violations of the New Mexico Unfair Practices Act

58. Allied Interstate's actions constitute unfair or deceptive trade practices within the meaning of the New Mexico Unfair Practices Act ("UPA"), as defined by NMSA 1978 § 57-12-2(D) generally and NMSA 1978 § 57-12-2(D)(14) and 57-12-2(D)(15) specifically.

59. Allied Interstate willfully engaged in these unlawful trade practices.

60. Mr. Obenauf is entitled to recover actual or statutory damages, actual or statutory damages trebled, plus reasonable attorney fees and costs.

61. Mr. Obenauf is also entitled to the injunctive relief that he requests in this lawsuit under the UPA.

### Third Claim for Relief: Tortious Debt Collection

62. Allied Interstate's actions and inactions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

63. Mr. Obenauf is entitled to recover actual and punitive damages.

### Request for Relief

Mr. Obenauf requests that this Court:

A. Injunctive relief directing Allied Interstate to never place a call to (505) 881-5245 unless it is attempting to collect a debt from Mr. Obenauf or his wife;

B. Award statutory and actual damages, for violations of the FDCPA;

C. Award statutory or actual damages, trebled, for violations of UPA;

D. Award actual and punitive damages, for tortious debt collection;

E. Award reasonable attorney fees and costs; and

F. Award such other relief as the Court deems just and proper.

Respectfully submitted,

TREINEN LAW OFFICE PC

ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)